Seldest, J.
 

 It is quite certain that the judge at the circuit erred in supposing that, by including a defence upon the merits in the same answer with the defence of a former suit pending for the same cause of action, the defendant had waived the latter defence. A doubt at one time existed, whether the Code had abrogated the rule of the common law which required matters in abatement to be first pleaded and disposed of before pleading in bar to the actionand there were, in the Supreme Court, conflicting decisions upon the subject. The question, however, came before this court in the case of
 
 Sweet
 
 v.
 
 Tuttle
 
 (4 Kern., 465), where it was held that the Code provided for but a single answer, in which the defendant is required to include every defence upon which he relies to defeat the action. This decision must be considered as settling the question. The only serious inconvenience suggested as likely to result from this construction of the Code is, that when an answer embraces both a defence in abatement and in bar, if the jury find a general verdict, it will be impossible to determine whether the judgment rendered upon the verdict should operate as a bar to another suit for the same cause of action or not. It would, however, be the duty of the judge at the circuit, in such a case, to distinguish between the several defences in submitting the cause to the jury, and require them to find separately upon them. In that way, it is probable that the confusion which might otherwise result may, in most cases, be avoided.^ At all events, the Code admits, I think, of no other construction.
 

 ' The judge, therefore, was not justified in rejecting the evidence offered at the trial to show the pendency of a former suit
 
 *402
 
 for the same cause of action, upon the ground that this branch of the defence had been-waived by including in the answer a defence upon the merits. If, however, for any other reason, the evidence was inadmissible, its exclusion should be sustained, The judge gave another reason for rejecting it, viz. that “ such former action pending was no defence to this action.”
 

 It is argued, in support of this ground for excluding the evidence, that, although the pendency of the suit commenced by Adison Gardner would -have been a good answer to another suit brought by him while he continued to own the demand, it is, nevertheless, no answer to a suit brought in the name of the assignee after the assignment to her. This would, I think, be a question of some difficulty, if it were really presented. But, in the view I take of the ease, it does not become necessary to pass upon it.
 

 The extent of the allegation in the answer on the subject of a prior suit is, that a
 
 copias ad respondendum,
 
 was issued “in a plea therein mentioned,” and that the defendant was arrested upon the writ and held to answer “ in a plea as aforesaid,” and that by this writ and taking a former suit at law was commenced for “the same identical cause of action,” &c.
 

 Now, it is clear that these allegations do not make out the pendency of such a suit as would be any defence to this action, were it brought in the name of Adison Gardner himself. Under our former System of practice, the cause of action could not be determined from the
 
 copias ad respondendum
 
 alone. Even if the
 
 copias
 
 contained what was called an
 
 ex etiam
 
 clause, that is, a clause stating in general terms the nature and form of the action intended, still the only consequence of declaring in any other form, and for any other cause of action, was, that the plaintiff thereby waived all right to bail in the action, if bail would otherwise have been required. But the allegation here is, simply, that the defendant was held to answer in a plea mentioned in the writ. For aught that appears, the
 
 copias
 
 issued was the ordinary writ requiring the defendant to answer in a plea of trespass only; in which case, the plaintiff
 
 *403
 
 was at entire liberty to declare in such form and for such cause of action as he might see fit. Until a declaration was filed or served, therefore, it was impossible, in a suit commenced by copias, to ascertain what the real cause of action would ultimately be. The allegation that the suit was for “ the same identical cause of action,” is not supported by the facts upon which it is predicated, and adds nothing whatever to the force of the previous averments. The answer in question, therefore, so far as it sets up the pendency of a former action by the same cause, is palpably defective, and, if demurred to, must have been held entirely insufficient to abate the suit.
 

 The offer made at the trial was simply to prove the facts stated in the answer. The defendant, in making the offer, quoted the language of the answer, as embracing the precise facts which he intended to prove. The inference plainly is, that this was all the evidence which he was prepared to give on the subject; and as these facts, if proved, would obviously have fallen quite short of making out any legal defence, the judge was right in rejecting the evidence as wholly immaterial.
 

 An exception was taken to that part of the charge to the jury, in which, the latter was told that, assuming that the defendant was entitled to demand payment for each load of barley upon its delivery, yet. if he delivered several loads' without requiring payment, “it was, in law, a waiver of the condition of the payment for each load as delivered, and credit was thereby given to Gardner for the barley so delivered.” This portion of the charge is somewhat equivocal, and its accuracy depends upon the interpretation which is given to it. If it meant that the defendant could no longer insist upon the condition in respect to the barley which had been delivered, . it is simply a self-evident proposition. If, on the other hand, it means that, by delivering several loads without insisting upon payment, the defendant had waived the condition as to the barley still to be delivered, so that upon the delivery of a subsequent load he could no longer insist upon payment for such load, it was, I think, clearly erroneous, I am inclined,
 
 *404
 
 howevel1, to think that neither of these is the true interpretation ; but that what the judge intended to say, and what the jury must have understood him to say, was, that the defendant could not insist upon payment for the barley which had been delivered, as a condition precedent to the delivery of the residue. If this is the true meaning of the language used in this portion of the charge, it was, in my judgment, obviously right.
 

 But the judge-carried his views as to the effect of the defendant’s act in waiving the condition as to several of the loads to still greater and, as I think, erroneous lengths, in the subsequent parts of his charge. Ue was requested by the counsel to charge, that, “ although the defendant had not required payment for each load so delivered, so far as the same had been delivered, yet the defendant had a right at any time, upon being ready to deliver a load and offering so to do, to demand payment for such load, and that, upon non-compliance by the plaintiff, the contract was broken on his part.” This request was refused by the judge, and the ground of this refusal is shown by his proceeding to charge that, “ if the said defendant intended to require payment for each load as delivered, for the barley thereafter to be delivered, and thus change the practice which he had begun with, he should have given Gardner
 
 reasonable notice
 
 that he intended to make such change, and should make demand of payment in such manner that it could have reasonably been complied with on the part of Gardner;”
 

 It is impossible, I think, to sustain the position here taken by the judge.' Upon what principle the omission by the defendant to insist upon his right to payment as to some of the loads of barley delivered can operate as a waiver of his right as to the residue, I am unable to perceive; There would, perhaps, be a legal difficulty in the way of its having this effect, even if so intended. A waiver, like a gift, can only operate
 
 in presentí.
 
 When intended to operate
 
 in
 
 futuro, it is at most only an agreement to waive, which, it would seem, must, like all other agreements, have a consideration. But, conceding that the defendant might, without any consideration, have
 
 *405
 
 bound himself, by agreeing in advance to waive his right to require payment for any portion of the barley when it should be delivered: how can the mere waiver of such right, as to one or more loads, amount to such an agreement ? It could, at most, only afford some slight evidence that the defendant did not intend to insist upon payment in hand for the subsequent loads; but would this Unexpressed intention, even if entertained, be obligatory upon him? I think not. The contract bound Gardner to have the money ready, at all times, at The place of delivery, to pay for each load as it should arrive; and although he might have some reason to suppose, from the delivery of several loads without requiring payment, that the defendant did not intend to insist upon payment in hand for the subsequent loads, yet this mere supposition could not release him from the positive obligation of his contract.
 

 But it was said upon the argument, that there was no evidence in the case to which the charge which the judge was requested to make could properly apply; and, hence, the judge was justified in his refusal, even if the principle embodied in che request is regarded as correct. It is true that a judge is not bound to charge upon a mere abstract proposition, not necessarily involved in the case. If, therefore, there was no evidence tending to show that Gardner had ever neglected or refused to pay for a load of barley which the defendant had actually offered and was then ready to deliver, the judge would have been under no obligation to instruct the jury as requested by the defendant’s counsel. But such evidence is, I think, clearly to be found in the testimony of the defendant. He says:
 
 “
 
 I went with one load, and stopped and went to Dun-ham’s, and asked for my pay of Dunham; Dunham said he had nothing to pay with, and I
 
 then went
 
 and sold the barley to Mr. Crouse.” If this means that, when he called upon Mr. Dunham at this time, he had a load of barley there, which he was ready to deliver upon receiving payment for that load, and that all that he asked for was payment for the load he then had, it makes out the case contemplated in the request of the defendant’s counsel. Whether this is the meaning of this
 
 *406
 
 portion of the testimony, was clearly a question for the jury. My conclusion, therefore, is, that the judge erred in refusing to charge as requested, and that for this error the judgment should be reversed, and there should be a new trial with costs to abide the event.
 

 Comstock, Ch. J., Davies, Clerke, Wright and Welles, Js., concurred; Denio and Bacon, Js., took no part in the case.
 

 Judgment reversed, and new trial ordered.